IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION



FILED
DES MOINES, IOWA
01 DEC 10 AM 11: 43
SOUTHERN DISTRICT OF IA

| | | |
|---|---|---|
| PATRICK NEPTUNE, | * | |
| Plaintiff, | * | NO. 4-00-CV-90328 |
| v. | * | APPENDIX TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CITY OF URBANDALE and BRAD ZAUN, | * | |
| | * | |
| Defendants. | * | |

COME NOW Defendants, and pursuant to Federal Rule of Civil Procedure 56, list

the following Appendix items:

A.    PATRICK NEPTUNE DEPOSITION

B.    BRAD ZAUN ANSWER TO INTERROGATORY NO. 4

C.    CITY OF URBANDALE ANSWER TO INTERROGATORY NO. 4

D.    PRELIMINARY COMPLAINT

E.    ARREST WARRANT

F.    URBANDALE POLICE DEPARTMENT INCIDENT REPORT (12/20/98)

G.    PATRICK NEPTUNE CORRESPONDENCE

GREFE & SIDNEY, P.L.C.

By _____
     Guy R. Cook

By _Donna R. Miller_
Donna R. Miller

2222 Grand Avenue, P.O. Box 10434
Des Moines, IA 50306
Telephone: 515-245-4300
Telefax: 515-245-4452

**ATTORNEYS FOR CITY OF URBANDALE AND BRAD ZAUN**

Copies to:

Jeffrey M. Lipman
Charles W. Hendricks
Lipman Law Firm, P. C.
8450 Hickman Road, Suite 16
Clive, Iowa 50325

### PROOF OF SERVICE

The undersigned certified that the foregoing instrument was served upon all parties to the above cause by service upon each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the _10th_ day of _Dec._, _2001_.

By:    ☒ U. S. Mail          _____ Fax
       _____ Hand Delivered   _____ Overnight Courier
       _____ Federal Express  _____ Other: _____

Signature: _Sharon Cox_

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2         FOR THE SOUTHERN DISTRICT OF IOWA
                    CENTRAL DIVISION
 3
   PATRICK NEPTUNE,              )
 4                              )
         Plaintiff,             )
 5                              )
         vs.                    ) No. 4-00-CV-90328
 6                              )
   CITY OF URBANDALE and        ) DEPOSITION OF
 7  BRAD ZAUN,                   ) PATRICK A. NEPTUNE
                                )
 8        Defendants.           )
 9
10       THE DEPOSITION OF PATRICK A.
   NEPTUNE, taken before Dina L. Dulaney,
11  Certified Shorthand Reporter, Registered
   Professional Reporter, commencing at
12  approximately 9 a.m., September 5, 2001, at
   8450 Hickman Road, Suite 16, Clive, Iowa.
13
             A P P E A R A N C E S
14
       Plaintiff by:
15
             CHARLES W. HENDRICKS
16            Attorney at Law
             8450 Hickman Road
17            Suite 16
             Clive, Iowa 50325
18
       Defendants by:
19
             DONNA MILLER
20            GUY R. COOK
             Attorneys at Law
21            2222 Grand Avenue
             Des Moines, Iowa 50312
22
   Also Present:  Frank Miller
23
   Reported by:  Dina L. Dulaney, CSR, RPR
24
25
```

Page 2

```
 1                    INDEX
 2
   PATRICK A. NEPTUNE              PAGE
 3
   Direct Examination by Ms. Miller    3
 4
 5
 6
 7
 8                  EXHIBITS
   EXHIBIT
 9  NUMBER   DESCRIPTION         PAGE
                                MARKED
10    1      Answers to
             Interrogatories     3
11
      2      Supplemental Answers 3
12
      3      Complaint           3
13
      4      Arrest Warrant      3
14
      5      Preliminary Complaint 3
15
      6      Notebook            12
16
      7      Notebook            12
17
18
19
20
21
22
23
24
25
```

DEFENDANT'S EXHIBIT

A

PENGAD-Bayonne, N.J.

Page

```
 1            (Whereupon, Deposition
 2      Exhibit Nos. 1-5 were marked for
 3      identification by the reporter.)
 4            PATRICK A. NEPTUNE,
 5  of lawful age, having been first duly sworn
 6  to tell the truth, the whole truth, and
 7  nothing but the truth, testified as follows:
 8            DIRECT EXAMINATION
 9  BY MS. MILLER:
10  Q. Could you please state your name for
11  the record.
12  A. Patrick Anthony Neptune.
13  Q. Your address?
14  A. Box 16481, Plantation, Florida 33318.
15  Q. What's your street address, the
16  physical location?
17  A. 7200 Northwest 1st Street, Plantation,
18  Florida 33317.
19  Q. Are you currently employed?
20  A. Yes, I am.
21  Q. Where?
22  A. I am a contract employee for the
23  Department of Transportation for the State
24  of Florida.
25  Q. How long have you been working at that
```

Page

```
 1  A. Since February of this year.
 2  Q. How long have you been at this address?
 3  A. My parents have been there for eight
 4  years.
 5  Q. In Plantation, Florida?
 6  A. Yes.
 7  Q. When did you move there?
 8  A. June, three years ago.
 9  Q. Where did you live before that?
10  A. 3501 Eula Drive in Urbandale.
11  Q. Would you walk me through your
12  education?  Where did you graduate from high
13  school?
14  A. Dowling High School, 1976.  I attended
15  Drake University from 1976 to 1978,
16  pre-med.  I transferred to Northeast
17  Missouri State at Kirksville.  I continued
18  my pre-med biology with a minor in
19  photography, did my student teaching at
20  Dowling High School and worked at Mercy
21  Hospital while I was teaching also.  And
22  then upon graduation from college, I went
23  active duty at Ft. Irwin, California, and I
24  was there from 1982 through 1985, and then
25  upon my return -- you said just education.
```

Page 25

1  contact order entered in your case in your
2  divorce case?
3  A. No.
4  Q. At some time?
5  A. No.
6  Q. Was there any no contact order with
7  regard to your ex-in-laws?
8  A. Yes, there is but that was way after
9  these arrests, and there would be no basis
10  for the no contact order. A 236 order is a
11  civil order, and this is based on a domestic
12  abuse. These arrests were based on a
13  domestic abuse order which has never
14  existed.
15  Q. Looks like this last one is violation
16  of Section 665 of the Iowa Code?
17  A. Right.
18  Q. Is that a different charge?
19  A. Basically it was another violation of a
20  no contact -- I believe that might have been
21  the no contact order with my ex-in-laws.
22  I'm not sure.
23  Q. Who is Sharon Luther?
24  A. My ex-mother-in-law. If that's when
25  Hy-Vee -- I was grocery shopping at Hy-Vee a

Page

1  racism?
2  A. They have been fully aware of all of my
3  complaints concerning the Urbandale Police
4  Department going back to 1985 and no
5  recourse or redress has ever been taken by
6  the city council or the mayor to address
7  those issues.
8  Q. So it's your allegation that every
9  single member of the Urbandale city council
10  from -- I'm sorry, what was the starting
11  date?
12  A. 1985.
13  Q. -- 1985 through '99 when you moved --
14  would that be an accurate time?
15  A. Yes.
16  Q. -- engaged in racial discrimination?
17  A. The fact that they took no corrective
18  measures to correct the blatant racism by
19  the Urbandale Police Department.
20  Q. What's your basis for that allegation?
21  A. My arrests, my harassment by Urbandale
22  police with me ever since my court case from
23  1985. Mr. Joshua -- Jarvis Joshua was
24  arrested by Officer Taylor who allegedly was
25  "driving a white woman's car," the

Page 26

1  block from my home. My ex-in-laws live on
2  62nd off of Aurora. My ex-mother-in-law
3  happened to be leaving the RP at the
4  corner from my house with my daughter and I
5  attempted to say hello to my daughter.
6  Q. Were you arrested at that time?
7  A. I was subsequently arrested within a
8  day or two on the same day. I can't
9  remember.
10  Q. What was the resolution of that charge?
11  A. I was found guilty on violation of that
12  order.
13  Q. Any lawsuits arising out of that
14  arrest?
15  A. No.
16  Q. Can you tell me what this page entitled
17  "Racism alive and well in Urbandale, Iowa"
18  is?
19  A. A letter that I have wrote to several
20  people -- names I do not know offhand --
21  that there's blatant racism in the City of
22  Urbandale by the city council and the mayor
23  and police department.
24  Q. Do you allege that any particular
25  members of the city council have engaged in

Pag

1  allegations by members of its own police
2  department, Sergeant Dana Peterson, Officer
3  Karen Robinson and a black male officer who
4  left the force because of harassment.
5     If the police department is
6  harassing their own and the city council
7  knew about it and took no action to correct
8  that situation, it's blatant racism even --
9  because they're not taking any measures to
10  correct the situation. It took a lawsuit by
11  members of its own police department to
12  bring those issues to light to the City of
13  Des Moines and Urbandale.
14  Q. Were you involved in any of these
15  lawsuits regarding the officers' lawsuits
16  against the City of Urbandale?
17  A. No, I was not.
18  Q. Were you involved in any way in this
19  Jarvis Joshua situation?
20  A. I had provided Maggie Moss a copy of a
21  letter received by Chief Hamlin -- the
22  document I cannot find with the first
23  complaint against Taylor. Chief Hamlin had
24  stated on the news when the Joshua incident
25  was brought to light that there had been no

Page 29

1  previous complaint of racism towards Officer
2  Taylor, and I told Ms. Moss and Mr. Joshua
3  in the meeting with them that there had been
4  previous incidents with Officer Taylor, and
5  I provided her a copy of the document.
6  Q. I'm assuming that Maggie Moss was
7  Mr. Joshua's attorney?
8  A. That's correct.
9  Q. Did you contact her?
10  A. Yes, I did.
11  Q. Did that go to trial?
12  A. No. The City of Urbandale settled out
13  of court.
14  Q. Did you ever have any personal contact
15  with any of these city council members over
16  this 15-year period about your claims?
17  A. I spoke to the city council once in
18  person.
19  Q. When was that, do you remember?
20  A. I believe it was after my arrests and
21  after all of this because Mr. Zaun was then
22  mayor so we're talking -- it was '99, before
23  I left.
24  Q. It was during '99?
25  A. Yes.

1  probably between '84 and '85.
2  Q. That would have been when you were
3  still on good terms with your in-laws?
4  A. That's correct.
5  Q. I wanted to go back to this document
6  entitled "Racism alive and well in
7  Urbandale, Iowa." You said you don't know
8  who you sent it to?
9  A. No. When I can afford it, I plan to
10  publish it.
11  Q. Can you tell me what kind of people you
12  sent it to? Did you send it randomly?
13  A. Randomly.
14  Q. To?
15  A. People living in Urbandale.
16  Q. How did you do that?
17  A. Picking names out of the phone book.
18  Q. Did you ever have any response from any
19  of these people?
20  A. No.
21  Q. Did you keep a list of the addresses
22  you sent it to?
23  A. No, I did not.
24  Q. Did you send this from Iowa?
25  A. I believe I was still living here when

Page 30

1  Q. You then spoke to the entire council at
2  a meeting?
3  A. That's correct.
4  Q. What did you tell them?
5  A. Basically that I felt that there was
6  blatant racism in the City of Urbandale by
7  the Urbandale Police Department and that the
8  mayor and the council had taken no
9  corrective measures to resolve the issue,
10  and that was basically it.
11  Q. Did they make any response?
12  A. None whatsoever.
13  Q. Have you at any other time ever talked
14  to a city council member or the council
15  itself over the 15 years?
16  A. One person possibly and I do not know
17  his name. He is best friends with my
18  ex-in-laws and lives right next door to
19  them.
20  Q. You talked to him?
21  A. Just in general conversation because he
22  was always over at my ex-in-laws.
23  Q. Do you know what time period that would
24  have been?
25  A. At that time I was still married so

1  I wrote that.
2  Q. It says in the first paragraph that
3  you're currently living in Ft. Lauderdale,
4  Florida?
5  A. Then I was in Florida then.
6  Q. You hadn't told me you had lived in
7  Ft. Lauderdale, Florida. When were you
8  living in Ft. Lauderdale?
9  A. This is after I moved there. This
10  letter is after I moved. Plantation is a
11  suburb of Ft. Lauderdale.
12  Q. Going back to that. You lived with
13  your parents when you lived in Iowa; is that
14  right?
15  A. That's right.
16  Q. Up until you moved to Florida?
17  A. That's correct.
18  Q. You currently live with your parents?
19  A. Yes.
20  Q. Have you always, aside from the
21  military and college, lived with them?
22  A. Yes, and the time that I was married
23  also.
24  Q. When you said you intend to publish
25  this document, where are you going to

Page 33

1  publish it?
2  A. I don't know if there's still an
3  Urbandale News. There used to be years ago
4  when I was here a paper called Urbandale
5  News; if not, publish it on the Internet,
6  and that's about it.
7  Q. Do you mean like buy an advertisement
8  kind of situation to put it in the paper?
9  Is that your intent?
10  A. Either that or a letter to the editor
11  type situation.
12  Q. Have you written a letter to the editor
13  of any newspaper?
14  A. Des Moines Register back several years.
15  Q. Several years from now?
16  A. Several years ago. There was a copy in
17  there too. You briefly glanced at it.
18  Q. Was that ever published?
19  A. No.
20  Q. Did you ever talk to anyone at the
21  Register about that letter?
22  A. No.
23  Q. Can you tell me what this next letter
24  is? It's not dated but it's addressed "To
25  whom it may concern."

Page 34

1  A. This is a letter to all the news
2  outlets here -- CNN, Dateline, 60 Minutes
3  and Des Moines Register, BET, NBC, ABC,
4  CBS -- concerning my arrest of October 16,
5  1998.
6  Q. So you sent this particular letter to
7  all of these news outlets?
8  A. That is correct.
9  Q. Do you know what the approximate date
10  of that letter would have been?
11  A. Early 1999.
12  Q. That was apparently before you moved to
13  Florida?
14  A. That's correct.
15  Q. Did you ever hear back from any of
16  these recipients?
17  A. No.
18  Q. Did you ever --
19  A. Yes, I'm sorry. I did hear back from
20  NBC and Dateline, and they said, "Thank you
21  for your story but we're not interested at
22  this time."
23  Q. Did you ever follow up with any of
24  these news organizations about your letter
25  to them?

Page

1  A. No.
2  Q. Did you ever write any other letters to
3  news organizations?
4  A. No.
5  Q. Can you tell me what this document is?
6  The first line is "First Amendment."
7  A. If I'm granted an opportunity to speak
8  to the jury, I have prepared a statement to
9  the jury.
10  Q. In this lawsuit?
11  A. That is correct.
12  Q. Do you intend to represent yourself at
13  trial?
14  A. Prior to the Lipman Law Firm taking
15  this case, I was prepared and I had prepared
16  to represent myself.
17  Q. When did you prepare this document?
18  A. Shortly after the incident, I believe.
19  Q. What incident would that be?
20  A. The arrest and after I had been found
21  not guilty at trial.
22  Q. So you intended to sue shortly after
23  the court ruled that you weren't guilty?
24  A. That is correct.
25  Q. I guess I would correct that. Did the

Page

1  court find you not guilty?
2  A. That is correct. There is a copy of
3  the order in the file also.
4  Q. Can you tell me why you have the Iowa
5  Code regarding assault?
6  A. It's also the one on harassment of
7  public officials, I believe.
8  Q. So it also has to do with this lawsuit?
9  A. Yes.
10  Q. I wanted to go back and touch on a
11  couple of things that we've already talked
12  about, especially with regard to your
13  education. You said that you had taken a
14  paralegal course starting in 1987?
15  A. That is correct.
16  Q. What prompted you to enroll in that
17  course?
18  A. After my divorce we were in court 60
19  days in a four month period. I lost my job
20  with Allstate. My legal fees were running
21  into the thousands and thousands of dollars
22  which I could not afford and my parents were
23  helping out the best that they could, and so
24  I decided to educate myself because I felt
25  that my ongoing problems with my ex-wife

Page 81

1   have any personal knowledge of anyone else
2   who has been followed by the Urbandale
3   Police Department which you believe --
4   A. Yes. I know a young lady spoke to me
5   that her friends and she -- she was a high
6   school student that recently had moved to
7   Urbandale within the last five years and was
8   constantly being followed and harassed by
9   the City of Urbandale Police Department.
10  Q. What was her name?
11  A. I can't reveal that.
12  Q. I'm going to ask you again. What's her
13  name?
14  A. I will not reveal her name.
15  Q. Where does she go to school?
16  A. She went to Urbandale.
17  Q. When did you have this discussion with
18  her?
19  A. 1998.
20  Q. What else did she tell you?
21  A. That she was being followed constantly
22  by Urbandale police.
23  Q. Any other information she gave you?
24  A. No.
25  Q. Just that one statement that she was

Page 82

1   constantly being followed by Urbandale
2   police?
3   A. Yes.
4   Q. Once again, you're refusing to provide
5   me with her name?
6   A. That's correct.
7   Q. Any other persons of which you have
8   personal knowledge that were followed you
9   believe unlawfully by the Urbandale Police
10  Department?
11  A. None that I can recall at this time.
12  Q. Any other personal information or
13  knowledge that you have about race based
14  traffic stops?
15  A. Not to my personal knowledge, no. Yes,
16  there is one other individual. All I
17  remember is the first name is Thomas, and we
18  were both employed at Mondo's. He was
19  visiting his mother here in Urbandale, and
20  the police had followed him to his mother's
21  house.
22  Q. Do you know how many times?
23  A. On more than one occasion.
24  Q. What's his race?
25  A. Black.

Page

1   Q. Do you know how many times they
2   followed him?
3   A. At least five that I can recall him
4   telling me about.
5   Q. Do you know anything else about those
6   events?
7   A. No.
8   Q. This girl that you talked to, where did
9   you talk to her? How did you come into
10  contact with her?
11  A. I met her through the paralegal
12  program.
13  Q. Did she ever file any complaints?
14  A. Not to my knowledge.
15  Q. Did this Thomas character ever file any
16  complaints?
17  A. Not to my knowledge.
18  Q. Anyone else?
19  A. Not to my recollection, no.
20  Q. In paragraph 3 you allege that "This is
21  a civil action by a nonresident plaintiff"?
22  A. That's correct.
23  Q. Were you a nonresident when you filed
24  this?
25  A. No.

Page

1   Q. So that's incorrect?
2   A. What's the date of this file? I had
3   just moved to Florida when this was filed.
4   Q. In paragraph 4 you allege that you were
5   a resident of Urbandale, Iowa, so that was
6   incorrect?
7   A. It says, "All material times hereto"
8   concerning the allegations in the complaint.
9   I lived in Urbandale, yes.
10  Q. In paragraph 5 you allege that "The
11  City of Urbandale is being named for
12  employing certain customs and practices
13  which are both discriminatory and
14  unconstitutional"?
15  A. That's correct.
16  Q. Anything we haven't talked about today
17  which supports that allegation?
18  A. No.
19  Q. I want you to tell me about the traffic
20  stop noted in paragraph 8 that occurred on
21  October 12, 1998.
22  A. I think the date might actually be
23  wrong. I think it's the 16th.
24  Q. October 16th, is that what you're
25  saying?

Page 85

1 A. Yes. I was coming home from Perkins on
2 the corner of 86th and Hickman. There is a
3 bypass road parallel to Hickman between 86th
4 and Patricia Drive. I was going one way
5 towards Patricia Drive. The police officer
6 in question was sitting at the traffic light
7 in the turning lane and there was an
8 oncoming car coming towards me in the
9 outside lane. As soon as the officer saw my
10 car, he turned on his lights, came through
11 the gap in the median and pulled me over at
12 the stop sign.
13 Q. And then what happened?
14 A. I asked him what he was stopping me
15 for, and he said I was driving on the wrong
16 side of the road. I informed the officer
17 that there was a car that turned right
18 behind him onto the bypass lane going
19 towards Perkins so there was no way that I
20 could have been in the wrong lane.
21 Q. Were you driving your own vehicle?
22 A. Yes, I was.
23 Q. What happened after that?
24 A. So I requested that the watch commander
25 be called to the scene because I was not

Page 86

1 going to accept any ticket for that alleged
2 wrongdoing when he knew full well that
3 nothing had occurred, so then the watch
4 commander came out. I believe it was
5 Sergeant Nielson, and I told him I was tired
6 of being harassed by Officer Whitacre and
7 all the other profile stops, and that Brad
8 Zaun would hear about it.
9 Q. What happened after that?
10 A. The following day I filed a written
11 complaint against Officer Whitacre,
12 personally went down and gave a copy to
13 Chief Hamlin and also gave a copy of the
14 federal lawsuit which I was planning on
15 filing, and then went up to Mr. Zaun's
16 hardware store and gave him a copy. I told
17 Mr. Zaun "I am tired of being harassed by
18 the City of Urbandale Police Department."
19 Q. After you talked to Sergeant Nielson,
20 did he have any response to your --
21 A. No.
22 Q. He didn't say a word?
23 A. No.
24 Q. What happened after that?
25 A. I went home.

Pag

1 Q. That night?
2 A. I went home.
3 Q. Did he tell you that you could
4 challenge that in court, the charges?
5 A. I don't recall that.
6 Q. How fast were you traveling that night?
7 A. Whatever the posted speed limit is.
8 Q. Do you know what that is?
9 A. 25, I believe. The ticket was not for
10 speeding.
11 Q. I understand. How fast was Officer
12 Whitacre traveling, do you know, before he
13 turned around?
14 A. He was at the stoplight.
15 Q. And so apparently you believe that he
16 could identify your car?
17 A. Yes.
18 Q. And you on sight?
19 A. Yes.
20 Q. When you went to the hardware store and
21 gave Mr. Zaun -- did you say a copy of the
22 complaint?
23 A. Against Officer Whitacre and a copy of
24 the federal complaint which I intended to
25 file in federal court.

Pag

1 Q. Did you talk to Mr. Zaun?
2 A. Yes, I did.
3 Q. Had you ever talked to him before?
4 A. Maybe a few times in high school.
5 Q. What did you tell him?
6 A. That I told him I was being tired of
7 being harassed by the Urbandale Police
8 Department. I saw him in church
9 occasionally.
10 Q. Was that all you told him that day?
11 A. Yes.
12 Q. Did he say anything?
13 A. No.
14 Q. Did you leave?
15 A. Yes.
16 Q. Have you ever called Mr. Zaun at his
17 home?
18 A. Yes.
19 Q. When was that?
20 A. I believe the same afternoon or the
21 next day. I can't remember.
22 Q. After you leave the hardware store,
23 when was the next contact you had with
24 anyone at the police department or Mayor
25 Zaun?

PATRICK A. NEPTUNE    CondenseIt™    September 5, 200

Page 121

1  harassed by Urbandale Police Department?"
2  I'm sure that there would be a floodgate of
3  letters coming in.
4  Q. Have you ever done that?
5  A. No.
6  Q. Do you plan on doing that?
7  A. No.
8  Q. Do you plan on calling this unnamed
9  woman?
10  A. No, I do not.
11  Q. Do you plan on calling this gentleman
12  that you worked with? I believe his first
13  name was Thomas.
14  A. He's no longer living in the area so I
15  have no idea where he lives.
16  Q. Paragraph 11 you allege "That plaintiff
17  called Brad Zaun at home shortly after the
18  traffic stop."
19  A. Yes.
20  Q. That differs from what you told me
21  earlier today.
22  A. No, it doesn't. We just didn't cover
23  that.
24  Q. I asked you what the next step was,
25  what your next contact with anyone --

Page 122

1  A. I forgot I had called him at home.
2  Q. When was that?
3  A. The next morning.
4  Q. What time in the morning?
5  A. I don't recall.
6  Q. Would it have been about 1:30 --
7  A. Could have been.
8  Q. -- a.m.?
9  A. Could have been.
10  Q. What was that discussion?
11  A. That I'm tired of harassment by
12  Urbandale Police Department. I was stopped
13  for a profile stop and I'm sick and tired of
14  it. He's the mayor and I want some action.
15  Q. Could you have waited until business
16  hours to call him?
17  A. The mayor is a public official. He is
18  the mayor of the City of Urbandale. The
19  police department doesn't go to sleep at
20  night. The city runs 24 hours a day.
21    MS. MILLER: Could you read back
22  my question?
23    (The requested portion of
24    the record was read by the
25    reporter.)

Page

1    MR. EENDRICKS: I guess I'm going
2  to object to that and at least ask you to
3  specify what you mean by business hours.
4  Q. (By Ms. Miller) Could you have waited
5  until the hours that city hall is open to
6  call him?
7  A. I was upset and I had just been through
8  a situation which I should not have been put
9  into, and I'm going to let the person know
10  exactly how if I feel about it, so I called
11  him 1:30 or 2:30 or whatever time in the
12  morning. He is the mayor. If there had
13  been an emergency anywhere else, they would
14  call him.
15  Q. So your answer is yes, you could have
16  waited until the morning to call him?
17  A. Probably.
18  Q. Did you use profanity or swear words in
19  your discussion with him?
20  A. Possible.
21  Q. Did you make any threats to him?
22  A. No, I did not.
23  Q. Did you say anything else to him other
24  than what we've discussed?
25  A. No.

Page

1  Q. Did he say anything to you?
2  A. Hung up on me.
3  Q. My understanding is you call him
4  immediately after the stop, maybe 1:30 in
5  the morning. You don't dispute that could
6  be the time; is that right?
7  A. No.
8  Q. And then you go to the hardware store
9  the next day; is that right?
10  A. I believe so.
11  Q. And then you call him again at home the
12  next day?
13  A. Yes.
14  Q. Any reason why you continued to contact
15  him?
16  A. I only contacted him twice. I went to
17  his hardware store once. If I contacted him
18  every time I had been pulled over or
19  stopped, that would be a different situation
20  but it's not. I only called him twice and
21  gave him the complaint in person.
22  Q. Can you recall the exact words you used
23  in your conversations with Mr. Zaun?
24  A. No, I don't.
25  Q. Would you admit that the time you

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| PATRICK NEPTUNE, | * | |
| Plaintiff, | * | NO. 4-00-CV-90328 |
| v. | * | |
| CITY OF URBANDALE and BRAD ZAUN, | * | **DEFENDANT BRAD ZAUN'S ANSWERS TO INTERROGATORIES** |
| | * | |
| Defendants. | * | |

COMES NOW Defendant Brad Zaun, pursuant to the Iowa Rules of Civil Procedure, and

hereby submits the attached Answers to the Interrogatories propounded by Plaintiff.

GREFE & SIDNEY, P.L.C.


By _____
    Guy R. Cook


By _____
    Donna R. Miller

2822 Grand Avenue, P.O. Box 10434
Des Moines, IA 50306
Telephone: 515-245-4300
Telefax: 515-245-4452

ATTORNEYS FOR CITY OF URBANDALE AND
BRAD ZAUN


DEFENDANT'S EXHIBIT

Original to:

Jeffrey M. Lipman
Charles W. Hendricks
Lipman Law Firm, P. C.
8450 Hickman Road, Suite 16
Clive, Iowa 50325

Copy to:

Ted E. Marks
Ted E. Marks Law Office
2404 Forest Drive
Des Moines, Iowa 50312

### PROOF OF SERVICE

The undersigned certified that the foregoing instrument was served upon all parties to the above cause by service upon each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the _23rd_ day of ___October___, 2001.

By:    __X__  U. S. Mail          _____  Fax
       _____  Hand Delivered      _____  Overnight Courier
       _____  Federal Express     _____  Other: _____

Signature: _Sharon Cox_____

**INTERROGATORY NO. 4**: Describe in narrative detail your version of the facts relating to this

case and whether or not these facts are based upon personal knowledge.

**ANSWER**:

Mr. Neptune made two calls to my home, one in the middle of the night and one in the afternoon. During the call at approximately 1 a.m., Mr. Neptune used profane language and called me various derogatory names. It was my understanding that he had been stopped by an Urbandale police officer for driving on the wrong side of the street, and that had prompted his call to me. I asked Mr. Neptune to calm down, but he did not. I then terminated the call.

My young daughter answered the call to my home in the afternoon. During that call, Mr. Neptune again used profane language and called me names.

A short time later, perhaps the next day, Mr. Neptune came to my hardware store. I was with a customer, and he gave me the Complaint he was threatening to file against the city and myself.

I have young children and was concerned for the safety of my family. In past dealings I and other City representatives have had with Mr. Neptune, I have known him to be unstable and volatile. It was this fear that caused me to make a complaint with the Urbandale Police Department.

# CERTIFICATE

I, Brad Zaun, pursuant to the applicable Rules of Civil Procedure, do state and certify under penalty of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my information and belief.

(c-25-01)
_____
Date

_____
Brad Zaun

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

PATRICK NEPTUNE,                    *

      Plaintiff,               *        NO. 4-00-CV-90328

v.                                  *

CITY OF URBANDALE and               *        **DEFENDANT CITY OF**
BRAD ZAUN,                                   **URBANDALE'S ANSWERS TO**
                                    *        **INTERROGATORIES**
      Defendants.

---

COMES NOW Defendant City of Urbandale, pursuant to the Iowa Rules of Civil

Procedure, and hereby submits the attached Answers to the Interrogatories propounded by

Plaintiff.

GENERAL OBJECTION

The Scheduling Order in this case set the deadline for discovery to be <u>completed</u> on

August 28, 2001.  Plaintiff served this discovery on Defendants on August 24, 2001.  Defendants

therefore object to these Interrogatories as untimely based on Plaintiff's failure to comply with the

Scheduling Order.

GREFE & SIDNEY, P.L.C.


By _____
    Guy K. Cook



By _Donna R. Miller_

Donna R. Miller

2222 Grand Avenue, P.O. Box 10434
Des Moines, IA  50306
Telephone:  515-245-4300
Telefax:  515-245-4452

ATTORNEYS FOR CITY OF URBANDALE AND
BRAD ZAUN

Original to:

Jeffrey M. Lipman
Charles W. Hendricks
Lipman Law Firm, P. C.
8450 Hickman Road, Suite 16
Clive, Iowa 50325

Copy to:

Ted E. Marks
Ted E. Marks Law Office
2404 Forest Drive
Des Moines, Iowa 50312

PROOF OF SERVICE

The undersigned certified that the foregoing instrument was served upon all parties to the above cause by service upon each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the 26th day of _Sept_ , 2001.

By:  ___X___   U. S. Mail          _____   Fax
     _____   Hand Delivered       _____   Overnight Courier
     _____   Federal Express      _____   Other: _____

Signature: _Sharon Cox_____

**INTERROGATORY NO. 4**: Describe in narrative detail your version of the facts relating to this

case and whether or not these facts are based upon personal knowledge.

**ANSWER**:

    I received a call from Mayor Zaun who stated that Patrick Neptuen had been calling his residence threatening legal action as a result of Mr. Neptune's contact with Urbandale Police Officers. Mayor Zaun inquired as to what steps he might take to remedy the problem. I suggested he file a report with the police department and we would pursue charges of harassment or harassment of a public official, if appropriate.

    Mayor Zaun filed a report, the report was forwarded to the Investigative Division, charges were approved by the County Attorney's Office, a judge signed an arrest warrant, and Mr. Neptune was arrested. Those are the facts as I remember them.

# CERTIFICATE

I, David L. Hamlin, pursuant to the applicable Rules of Civil Procedure, do state and certify under penalty of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my information and belief.


_09-26-01_
Date

_David L. Hamlin_
Chief David L. Hamlin

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

## PRELIMINARY COMPLAINT
(And statement of Probable Cause)

STATE OF IOWA
Vs.

Defendant: PATRICK A. NEPTUNE

Address: 1831 FULLER RD.

City: WEST DES MOINES  State: IA  Zip:

Court Case No. SMAC 2160
Agency Case No. 98-2-6868
Soc. Sec. No. 480-66-66
Date of Birth 1-7-57
Description

| Hgt. | Wgt. | Eyes |
| --- | --- | --- |
| 600 | 250 | B |

Sex M
Race B

DATE OF ARREST _____

THE DEFENDANT IS ACCUSED OF THE CRIME(S) OF: HARASSMENT 3RD

IN VIOLATION OF SECTION(S) 708.7 (4)   Of the Code of Iowa Committed on or about the 16 day of OCTOBE
27

**BASIS OF PROBABLE CAUSE**

Defendant was implicated in this crime by:
( ) Eyewitnesses to the crime
( ) Fingerprints
( ) Named by witnesses
( ) Photographic lineup
( ) Co-defendant
( ) Caught in the act
( ) Observed by officers  2 cts: Simple
( ) Proximate to the scene
(X) Admissions / statements
( ) Possession o
associated with

THIS CRIME: INVOLVED A WEAPON ( )   RESULTED IN PERSONAL INJURY ( )

Other facts Important to Probable Cause or Bail DEFENDANT CALLED BRADLEY ZAUN RESIDENCE
SEVERAL OCCASIONS, IDENTIFIED HIMSELF AND BEGAN SWEARING A
USING ABUSIVE LANGUAGE TOWARD MR. ZAUN.

Signature of Officer: Sgt. Howard Hansen   Date 11/14/98

Police Agency Urbandale

Assistant County Attorney Approving Charge

WITNESS NAME
BRAD ZAUN
OFF. T. McGEE
OFT. T. WHITACRE
SGT. T. NIELSEN

ADDRESS
6931 DOUGLAS
UPD
UPD
UPD

Signed and Sworn to in the Court's presence.

On this 12th day of November, 198
on Judicial Inquiry made, the Court finds
that PROBABLE CAUSE EXISTS for the charge
and to detain the accused thereon.

THE DEFENDANT IS TO BE ADMITTED TO BAIL UNDE
FOLLOWING CONDITIONS:

BOND AMOUNT 155.00    CASH ONLY
CASH OR SURETY   X    OR
OTHER CONDITIONS IMPOSED WITH BAIL

Judge or Associate Judge

MISDEMEANOR: On a Plea of Guilty to the Crime of _____

The defendant is fined $ _____   Placed on Probation for _____

Ordered to perform community service as follows: _____

The defendant is ordered to pay all fines imposed together with court costs and surcharges by _____

Judge or Associate Judge

DEFENDANT'S
EXHIBIT
D

DEPOSITION
EXHIBIT
#5

**ARREST WARRANT**

ORIGINATING AGENCY ___ RMRN Urbandale CASE NO. 98-2

STATE OF IOWA

98 NOV 12  :11: 0 | POLK COUNTY
CRIMINAL NO: SMAC 216605

COUNTY OF POLK

DEFENDANT'S PHYSICAL DESCRIPTION    CRIMINAL CHARGE: Harassment 3rd

EYES: ___ Bro ___

HAIR: ___ Blk ___

HT ___ 6'0" ___    CODE SECTION: ___ 708.7(4) ___

WT: ___ 250 ___    Date Warrant issued: ___

SEX: ___ M ___

RACE: ___ B ___    JUDGE: ___

DEFENDANT'S NAME ___ Patrick A. Neptune ___

DEFENDANT'S ADDRESS ___ 1831 Fuller Rd., West Des Moines ,IA ___

SOCIAL SECURITY NUMBER ___ 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 ___    DATE OF BIRTH ___ 1-7-57 ___

FOR MORE INFORMATION, CONTACT: ___

TO: ANY PEACE OFFICER OF THE STATE

<u>XX</u>    A complaint having been filed with me, and a finding of probable cause having made that the defendant committed the above

___    An Information (Indictment) having been filed in the District Court of said county charging the defendant with the abov
crime.

___    The defendant having failed to appear before this court after initial appearance but prior to final disposition of the above c

___    The defendant, having been given a suspended deferred sentence for the above violation and a complaint having been filed w
court to revoke such probation.

You are commanded forthwith to arrest said defendant and take him/her before the nearest, most accessible magistrate w
unnecessary delay pursuant to Section 804.21 of the Iowa Criminal Code.

Bail is set in the amount of ___ 155.00 ___

Unsecured appearance bond is
___acceptable___ X ___unacceptable

Ten percent deposit is
___acceptable___ Y ___unacceptable

___(Associate) Judge, Magistrate
(Deputy) Clerk

Seal
(If officer has)

Note: Clerks and Judicial Magistrates
cannot always issue warrants of arrest.
(See Section 804.2, the Code)

DEFENDANT'S
EXHIBIT

E

DEPOSITION
EXHIBIT

UPD FORM
82-6102

# URBANDALE POLICE DEPARTMENT

| ☐ JUVENILE INVOLVED | **NARRATIVE FORM** | INCIDENT # 98-268 |
|---|---|---|

| CLASSIFICATION: | DATE OF THIS REPORT: | DATE OF ORIGINAL REPORT: |
|---|---|---|
| Warrant Arrest | 12-20-98 | 12-20-98 |

| VICTIM NAME: | CONNECTED INCIDENTS # |
|---|---|
| | 98-31339 |

ITEM #

1. **Arrested:**  Patrick Anthony Neptune  DOB: 01-07-57  SOC: 480666031
   1831 Fuller Rd  West Des Moines,IA 50265

2. **Vehicle:**  1988 Ford Taurus Wagon Begie in color Iowa LIC: 262GLQ
   Registered Owner: Patrick Neptune Urbandale,IA.

3. **Charges:**  Warrant Urbandale Police Dept. Harassment of Public Official
   Interference with official acts
   Harassment of a public official

4. **Narritive:**    On 12-20-98 at approx. 9:05 pm I was on a traffic stop at
   Interstate I-80 and Douglas Ave on Douglas in the city of
   Urbandale,IA.. While I was in the process of completing the traffic
   stop I observed the above Ford Taurus drive by slowing down and
   yelling at me " OINK OINK OINK" I at that time got behind the subject
   at the 3700 blk of 100th street and ran the defendant license plate.
   While I was in the process of calling in the plate the defendant Mr.
   Neptune, Stuck his left arm out the window and gave me the bird. I
   was at this time advised by Urbandale dispatch that the registered
   owner Patrick Neptune was wanted out of our police dept. I at that
   time activated my emergency lights and attempted to stop Neptune.

   Neptune pulled his vehicle into the 3100 blk of 100th street and
   parked. I then approached the vehicle and asked for his drivers
   license. Neptune then stated why. He then stated why was I stopped
   I then asked Mr. Neptune to step out of his vehicle. Mr. Neptune
   stated no why did you stop me. I told Mr. Neptune that he was under
   arrest for a warrant out of the city of Urbandale. I again stated to
   Mr. Neptune to please get out of his vehicle and he at that time
   put his vehicle into drive and drove away from me. I repeatedly told
   Mr. Neptune to stop as he began to leave. I then radioed dispatch
   that Mr. Neptune was trying to drive away.

   At this time Neptune tried to enter 100th street at Muligans Bar and
   100th street. Neptune was block by Officer Whitacre of Urbandale Police
   Dept. I then placed Mr. Neptune under arrest for the warrant and the
   other violations. Neptune was then transported to UPD I activated my
   CONTD.

**DEFENDANT'S
EXHIBIT**

   F

PENGAD-Bayonne, N.J.

| REPORTING OFFICER | | DIVISION | DISPOSITION DATE |
|---|---|---|---|
| Rank PTRLM    Name  Jay Pickett | ID  1079 | PTRL | 12-20-98 |
| REVIEWING SUPERVISOR | | | |
| Rank *Sgt*  Name *Sutton* | ID  1025 | | |

UPD FORM
82-8102

# URBANDALE POLICE DEPARTMENT

☐ JUVENILE INVOLVED    **NARRATIVE FORM**    INCIDENT #  3
98-26

| CLASSIFICATION: | DATE OF THIS REPORT: | DATE OF ORIGINAL REPORT: |
|---|---|---|
| Warrant Arrest | 12-20-98 | 12-20-98 |
| VICTIM NAME: | CONNECTED INCIDENTS # | |
| | 98-31339 | |

ITEM #

Narritive Contd:    tape recorded and placed it on the dash of my patrol car.
When I was attempting to handcuff Mr. Neptune he was not
coroporative and was difficult to handcuff. I then transported
Mr. Neptune to UPD. I took Mr. Neptune into the jail and told
him when I removed the handcuff please place his hand on the wall
Mr. Neptune would not answer me if he under stood the instructions
I then asked again and he stated "yes I understand Asshole".
Officer Logsdon then arrived into the Jail to assist me in the
booking process.

5.  Disposition:    On 12-20-98 Mr. Neptune was released on bail from UPD. The
defendants father and sister came to UPD with Money Orders for
the amount of 935.00 . Neptunes car was impounded to R&R towing
the vehicle was released to Neptune at UPD when he was released.
Neptune was alos advised that he was not to tresspass on the
property of Zauns Hardware in Urbandale,IA. . Neptune was also
advised that any further harassment would be delt with in the same
manor. Mr. Neptune made no comment.  Neptune was given a court
date of 12-29-98 at 1:00pm Polk Co. Courthouse.

| REPORTING OFFICER | | | DIVISION | DISPOSITION DATE |
|---|---|---|---|---|
| Rank  PTRLM        Name    Jay Pickett | | ID    1079 | PTRL | 12-20-98 |
| REVIEWING SUPERVISOR | | | | |
| Rank            Name | | ID | | |

Racism alive and well in Urbandale, Iowa.

My name is Patrick Neptune. I am an African-American male currently living in Ft. Lauderdale Florida.

I previously lived in Urbandale, Iowa, a suburb of Des moines, Iowa.

I am writing you concerning blatent, open acts of Racism, by the City of Urbandale, and it's police department.

I have had an ongoing problem of racial profiling, by the Urbandale Police Department.

On October 16, 1998, I was stopped by an officer of the urbandale police department, for which I felt it was a racially motivated profile stop.

I filed a written complaint with the the mayor of Urbandale. Brad Zaun, who is white, and a copy with the police department, condemning the incident.

**DEFENDANT'S**

I also placed two calls to the mayor concerning the incident, and voiced my concerns of racial profiling by the Urbandale Police Dep.

two weeks later, mayor Brad Zawn initiated a complaint against me for harrassment.

I was arrested and held on a 1,000 cash bond on Christmas Eve 1998.

the case went to trial in May 1999. At Trial I represented myself pro se and won.

Prior to the case going to trial, Attorney Wendell Harms, attorney for the City of Urbandale realized that the City had no case requested that the mayor and city council drop the charges. Both the mayor and city council refused.

After the city lost the case, Attorney Wendell Harms, was fired by the City of Urbandale

It is the right and the duty of every American to alert government officials to injustices in the system.

Pat Neptune
1831 Fuller RD #6
West Des Moines, IA
50265
(515) 327-1292

To whom it may concern:

My name is Patrick Neptune. I am an African American male living in Des Moines, Iowa.

On October 16, 1998, I was stopped by officer Tim Whitacre of the Urbandale Police Department. Urbandale is a suburb of Des Moines, Iowa.

This was not my first encounter with officer Whitacre. Officer Whitacre is Caucasian. I believed the stop in question was a profile stop. I was charged with allegedly driving down the wrong side of the road.

I fought the ticket and was found not guilty

I filed a complaint against Officer Whitacre with the Urbandale Police Department, and hand delivered a copy of the complaint to Brad Zaun, mayor of the City of Urbandale. I informed the mayor that I was tired of being harassed by members of the Urbandale Police Department. (copy enclosed)

three weeks after the encounter with mayor zaun he filed a complaint against me for harassment (copy enclosed.)

I was arrested and incarcerated December 23, 1998.

All attempts to resolve the issue prior to trial were unsuccessful.

I filed a motion to dismiss with the Court. (copy enclosed

the day of trial mayor zaun still refused to dismiss the charges.

Prior to jury selection, a hearing was held on my motion to dismiss. the Court dismissed all charges. case # 216605 (copy Enclosed),
the First Amendment of the Constitution grants us free speech, and the right to petition the Government for a redress of grievances.

Our constitution does not permit governmental officials to put their critics, no matter how annoying in jail.

The U.S. Supreme Court in a 1987 case stated, "the freedom of individuals verbally to oppose or challenge governmental actions without thereby risking arrest, is one of the principal characteristics by which we distinguish a <u>Free</u> Nation from a police state."

there is currently on file in the U.S. District court for Southern IOWA, a suit against the mayor and City of Urbandale for malicious prosecution and false arrest.

thank you for your time.

Pat Pepture

Encl

cc: Des moines Register        : 20/20
    : who ch. 13              : BET
    : WOI ch. 5              : NBC
    : KCCI ch. 8            : ABC
    : CNN                   : CBS

PAT NEPTUNE
1831 Fuller R.D. #6
West Des moines, IA
50265
(515) 327-6292

NBC NEws
30 RockerFeller Plaza  Rm 3005
NEW york, NEW york 10112

To whom it may concern:

My NAme is PATRick NEptune. I Am An African
American male living in Des moines, Iowa.

ON October 16, 1998, I was stopped by
OFFicer Tim whitacRE of the UrbanDale Police Department
Urbandale is a suburb of Des moines, Iowa.

This was not my first encounter with officer whitacre.
Officer whitacre is caucasian. I believed the stop
in question was a profile stop. I was charged with
allegedly driving down the wrong side of the road.

I fought the ticket, and was found not guilty.

my complaint of discrimination against the City of Urbandale and its police department is not the first from an african American.

Two years ago an AFRICAN-American motorist was stopped for "driving a white woman's car."

The officer in question is still with the Urbandale Police Department.

the city of Urbandale settled out of Court.

Shortly thereafter The City of Urbandale was sued by members of its own police department for both racial and sextual discrimination. Again the City of Urbandale settled out of Court.

As a result a caucasian female officer, and the only AFRICAN-American male officer on the Urbandale Police force resigned.

IF government officials had all their critics arrested for voicing their concerns or political views we'd all be in jail.

In a 1989 case the Iowa Supreme Court stated, "Our constitution does not permit government officials to put their critics, no matter how annoying, in jail."

It is the right and duty of every american to alert government officials that there's something wrong with the system.

The U.S. Supreme Court in a 1987 case stated "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.

Respectfully

Patrick A. Neptus

enclosures (  )

Patrick Neptune
West Des moines, Iowa
(515) 327-1292

News Director

To whom it may concern:

My name is Patrick Neptune. I am an African American male living in West Des moines, formerly of Urbandale.

Since 1986 I have had ongoing problems with the City of Urbandale and its police department.

On October 16, 1998 at approximately 1:15AM, I was returning home after an evening with my parents and having a late supper at Perkins.

I was stopped by Urbandale Police Officer Tim Whitacre for allegedly driving down the wrong side of the road. I believed the stop to be a profile stop, in that officer Whitacre had previously stopped me on other occasions.

The case went to trial and I was found Not Guilt

the United States supreme Court in a 1987 case
stated, " the freedom of individuals verbally to oppose
or challenge governmental actions without
thereby risking arrest is one of the principal
characteristics by which we distinguish a free
nation from a police state."


Thank you for your time

Pat Knighten